*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BEVERLY/RICHARDSON, Minors.

UNPUBLISHED
February 09, 2026
1:05 PM

No. 374386
Wayne Circuit Court
Family Division
LC No. 2023-001994-NA

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals of right the order removing her minor child, RR, from her care and custody. The trial court decided that it was contrary to RR's welfare to remain in the home of respondent-mother, and that reasonable efforts were made to prevent removal of RR. We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (the DHHS), initially removed ROBJ and TMB from respondent-mother in November 2023 after a referral alleging respondent-mother sexually abused ROBJ and TMB and failed to protect ROBJ and TMB from abuse. ROBJ and TMB recounted, during Kids-TALK interviews organized by Children's Protective Services (CPS), that they were sexually abused by respondent-mother and a man they did not know when they were residing at a community shelter. ROBJ reported that the unknown man performed oral sex on ROBJ and TMB. TMB stated that respondent-mother "rubbed [TMB's] private area."

A petition was filed seeking removal of ROBJ and TMB from respondent-mother's home. Respondent-mother waived probable cause, and the trial court authorized the petition. ROBJ and TMB were placed with their maternal aunt. Seven months later, respondent-mother gave birth to RR, who joined his siblings, ROBJ and TMB, in a placement with their maternal aunt under a CPS safety plan. But the maternal aunt subsequently attempted to abandon RR with CPS staff. In July 2024, an amended petition was filed asking that the trial court take jurisdiction of RR and remove RR from respondent-mother. On July 31, 2024, an ex parte order was entered directing the DHHS to take custody of RR. In that order, the trial court found that RR did not have adequate care due to respondent-mother's history of sexual abuse, neglect, and failure to protect. Also, the trial court

found that RR's maternal aunt was unwilling to keep RR in her care and no one had been identified as RR's legal father. The trial court further found that reasonable efforts to prevent removal of RR had been made, citing the maternal aunt's attempt to abandon RR with CPS staff. Therefore, the trial court ordered that RR be placed in DHHS custody.

A two-day preliminary hearing took place on August 19, and September 13, 2024. On the first day of that hearing, the trial court recited the findings in the July 31, 2024 ex parte order, but the trial court did not render any further findings. When the preliminary examination resumed on September 13, 2024, the trial court explained that, "based on the waiver of probable cause and the prior findings from the order of July 31, 2024 that led to the removal of the child [i.e., RR,] I am going to authorize this Petition." The order entered after the preliminary hearing included findings that "[t]he probable-cause determination was waived by all parties present[,]" that "[c]ontrary to the welfare findings were made in a prior order[,]" and that "[c]onsistent with the circumstances, reasonable efforts to prevent or eliminate removal of the child(ren) from the home were made as determined in a prior order." Additionally, the order noted that RR was "placed with the [DHHS] for care and supervision" because custody with respondent-mother "presents a substantial risk of harm to [RR]'s life, physical health, or mental well-being." The order further explained that "[n]o provision of service or other arrangement except for the removal of [RR] is reasonably available to adequately safeguard [RR] from the risk of harm to [RR]'s life, physical health, or mental well-being." Finally, the order stated that the "[c]onditions of custody at the placement away from the home and with the individual with whom [RR is] placed are adequate to safeguard [RR]'s health and welfare." After the trial court issued that order, respondent-mother filed this appeal.

## II. LEGAL ANALYSIS

Respondent-mother argues that the trial court erred by finding that it was contrary to RR's welfare to remain in respondent-mother's home, and that reasonable efforts were made to prevent removal. We review such findings for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous when an appellate court has a definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

The trial court did not clearly err by finding that it was contrary to RR's welfare to remain in the care and custody of respondent-mother and that reasonable efforts were made to prevent the removal of RR. Under MCR 3.965(B)(12), a trial court must decide at the preliminary hearing

> whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial. The court may authorize the filing of the petition upon a showing of probable cause, unless waived, that one or more of the allegations in the petition are true and fall within MCL 712A.2(b).

According to MCL 712A.13a(9), a trial court can place a child in foster care if all of the following conditions are met:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

When a trial court orders placement of a child in foster care, the "court must make a statement of findings, in writing or on the record, explicitly including the finding that it is contrary to the welfare of the child to remain at home and the reasons supporting that finding." MCR 3.965(C)(3).

Respondent-mother faults the trial court for failing to make findings to support its decisions that it was contrary to RR's welfare to remain in the care and custody of respondent-mother, and that reasonable efforts were made to prevent the removal of RR. A trial court "must make explicit findings" about the welfare and reasonable-efforts determinations. *In re Benavides*, 334 Mich App at 168. Here, the trial court made such explicit findings. The trial court's contrary-to-the-welfare and reasonable-efforts findings were first made in the July 31, 2024 ex parte order, then recited at the outset of the preliminary hearing on August 19, 2024, and ultimately memorialized in the order entered after the preliminary hearing ended on September 13, 2024. In that order, as well as in the July 31, 2024 ex parte order, the trial court found RR was at a substantial risk of imminent harm, that the circumstances warranted issuing the order, and that the reasons for ROBJ and TMB being in care had not been adequately addressed by respondent-mother. In addition, the trial court found that reasonable efforts were made to prevent RR's removal, citing his placement with his maternal aunt, who tried to abandon RR with CPS staff. Therefore, the trial court made all of the findings necessary to remove RR from respondent-mother's care and custody. Specifically, the trial court addressed all five requirements in MCL 712A.13a(9), and the trial court also found that the DHHS had made reasonable efforts to prevent RR's removal.

The trial court's reliance on prior findings, including reported sexual abuse by respondent-mother and respondent-mother's failure to protect ROBJ and TMB from abuse, furnishes sufficient support for the trial court's decision to remove RR. The trial court reasonably decided that it was contrary to the welfare of an infant, RR, to be placed with a parent with a history of sexual abuse of children. As this Court has explained:

In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction. The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect. [*In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (citations and quotation marks omitted).]

The trial court likewise had sufficient evidence to justify its reasonable-efforts finding. RR was placed in his maternal aunt's home after the DHHS filed the petition, but RR's aunt thereafter attempted to abandon RR with CPS staff, so the trial court did not clearly err by finding that the DHHS had put forth reasonable efforts to prevent removal of RR from respondent-mother's care.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani